# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 96-2352EM

_____

United Food and Commercial      *
Workers, AFL-CIO, CLC,          *
Local No. 88,                   *
                                *
                                *   On Appeal from the United
        Appellant,              *   States District Court
                                *   for the Eastern District
    v.                          *   of Missouri.
                                *
                                *
Shop 'N Save Warehouse          *
Foods, Inc.,                    *
                                *
        Appellee.               *

_____

Submitted:  February 12, 1997

Filed:  May 16, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, HANSEN and MORRIS SHEPPARD ARNOLD,
    Circuit Judges.

_____

RICHARD S. ARNOLD, Chief Judge.

    United Food and Commercial Workers, AFL-CIO, CLC, Local No. 88 appeals from an order of the District Court[1] denying the union's motion for summary judgment to vacate an arbitration award and granting summary judgment in favor of Shop 'N Save Warehouse Foods,

_____

[1]The Hon. Mary Ann L. Medler, United States Magistrate Judge for the Eastern District of Missouri.

Incorporated.  The District Court refused to vacate the arbitrator's award.
The Court found that the award "draws its essence" from the collective-
bargaining agreement and is therefore valid.  We affirm.

I.

Shop 'N Save hired Patricia Wright on November 11, 1982, as a full-
time meat wrapper.  In June 1990, Wright shattered a disk in her back while
working.  At the time Wright injured her back she was represented by the
union.  Surgery was performed on Wright's back in July 1990, and she was
off work until January, 1991.

On November 16, 1991, while working, Wright began experiencing back
problems again and called Dr. Shultz, who had performed her back surgery.
Dr. Shultz removed Wright from work and treated her with therapy.  At the
time Wright ceased working on November 16, 1991, she was earning $12.40 per
hour and was receiving benefits.  Wright underwent another back operation
in December 1991.  This second surgery was performed by Dr. Murphy.

In October, 1992, while Wright was still on a leave of absence, she
began experiencing pain in her knees.  She had her knees examined by Dr.
Haupt, an orthopedic specialist.  After examining Wright, Dr. Haupt
determined that her knees had become weak from the inactivity caused by her
back surgery and, as a result, she needed more therapy.

On November 4, 1992, Dr. Murphy gave Wright a full release to return
to work.  However, Dr. Haupt gave Wright a release to return only under
limited duty conditions:  namely, "no stooping, no squatting and no stair-
climbing."  Her job required stooping.

On November 4, 1992, Wright talked with John Dougherty, Shop 'N Save's Vice President of Human Resources, concerning Dr. Murphy's and Dr. Haupt's reports. During that conversation, Dougherty informed Wright that she could not perform the essential functions of her job as a meat wrapper and, therefore, could not return to work. Dougherty announced Wright's termination on November 4, 1992.[2]

On November 17, 1992, not having received any medical documentation releasing Wright to perform the essential functions of her job, Shop 'N Save officially discharged her. Neither Wright nor the union filed a grievance over Shop 'N Save's decision to discharge her.

On January 13, 1993, Wright secured a report from Dr. Haupt indicating her ability to work under full-duty conditions with no restrictions. In January 1994, Shop 'N Save rehired Wright as a part-time meat wrapper. At the time Wright was rehired, she completed a new application for employment and was required to complete other documents for new employees. Wright was paid $8.00 per hour, received no benefits, and enjoyed no seniority with Shop 'N Save for the years she had worked before January 1994.

After Shop 'N Save rehired Wright, the union and Wright filed a grievance alleging that Shop 'N Save's actions violated the parties' collective-bargaining agreement. Specifically, the union alleged that Shop 'N Save failed to recognize Wright's proper seniority level, thereby depriving her of a pay rate of $12.40 an hour and health, welfare, and pension benefits. The union demanded

---

[2]Wright did not exhaust 12 months of medical leave until after November 16, 1992.

that Wright be reinstated at the higher rate of pay, and the matter went to arbitration.

## II.

The scope of judicial review of arbitration awards under collective-bargaining agreements is extremely limited.  As the Supreme Court said in United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987) (quoting United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960)):

> [T]he courts play only a limited role when asked to review the decision of an arbitrator.  The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract. . . . As long as the arbitrator's award "draws its essence from the collective bargaining agreement," and is not merely "his own brand of industrial justice," the award is legitimate.

Misco goes on:

> Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.  To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them.  The same is true of the arbitrator's interpretation of the contract.  The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.

Misco, 484 U.S. at 38, citing Enterprise Wheel, supra, at 599.

A court "cannot interfere with the arbitrator's award 'unless it can be said with positive assurance that the contract is not susceptible of the arbitrator's interpretation.'"  Kewanee Machinery Division, Chromalloy American Corp. v. Local Union No. 21, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 593 F.2d 314, 318 (8th Cir. 1979) (quoting International Brotherhood of Electrical Workers v. Professional Hole Drilling, Inc., 574 F.2d 497, 503 (10th Cir. 1978)).

Thus, "'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.'"  John Morrell & Co. v. Local Union 304A of the United Food & Commercial Workers, 913 F.2d 544, 559 (8th Cir. 1990), cert. denied, United Food & Commercial Workers Int'l Union v. John Morrell & Co., 500 U.S. 905 (1991), (quoting Misco, 484 U.S. at 38).  In determining whether an arbitrator has exceeded his authority, the agreement must be broadly construed with all doubts being resolved in favor of the arbitrator's authority.  John Morrell, 913 F.2d at 560, citing Lackwanna Leather Co. v. United Food & Commercial Workers Int'l Union, 706 F.2d 228, 230-31 (8th Cir. 1983) (en banc).

III.

In this case the union contends that the arbitrator's award failed to draw its essence from the collective-bargaining agreement.  The union argues that if Wright's seniority was not legitimately broken, pursuant to the collective-bargaining agreement, then her grievance deserved to be sustained.  The pertinent provisions of the collective-bargaining agreement are as follows:

-5-

## ARTICLE 6 GRIEVANCE AND ARBITRATION PROCEDURES

Section 6.2 The Company and the Union shall mutually agree to an impartial arbitrator to hear said arbitration case . . . Such arbitrator shall not be empowered to add to, detract from, or alter the terms of this Agreement.

## ARTICLE 8 SENIORITY

(b) Seniority shall be considered broken if an employee is duly discharged by the Employer, if he voluntarily quits, if he has been laid off continuously for a period of more than twelve (12) months, or if he is called back to work after a layoff and does not report for work within one week.

The Employer will notify the laid off employee by certified mail at the last known address.

## ARTICLE 27 LEAVES OF ABSENCE

A leave of absence shall be defined as a period during which an employee must, for legitimate reasons, be absent from work. Leaves under this article shall be limited to:

> A. Military
> B. Medical
> C. Union
> D. Personal

They shall be for a specified length of time and without pay.

\* \* \*

## (B) MEDICAL LEAVE

A leave of absence for reasons of extended personal illness, injury or pregnancy shall be granted to all employees with six (6) or more months of seniority, for an initial period not to exceed thirty (30) days provided such request is supported by satisfactory medical evidence. If at the end of the thirty (30) days the employee is unable to return to work, the leave may be extended for an additional thirty (30) days and each thirty (30) days thereafter up to a maximum of twelve

(12) months provided each request for an extension is supported by satisfactory medical evidence.

### RETURN TO WORK

Following compliance with the terms of (B) above, an employee, upon returning to work with a doctor's release indicating physical fitness to return to work, shall be placed in the same job classification, seniority permitting, and shall receive the rate of pay then established for the job. The employee will be scheduled for work on the next posted schedule in accordance with seniority, provided that the necessary notification and/or release was presented to the Employer at least twenty-four (24) hours prior to the time called for in this Agreement for the posting of the written schedule.


The union argues that Wright was not "duly discharged" under the plain language of the collective-bargaining agreement because she was fired on November 4, 1992, 13 days before her leave of absence would have expired under Article 27. [3] Consequently, her seniority was not legitimately broken, so that she was entitled to a higher rate of pay upon her rehiring. The union contends, therefore, that the arbitrator exceeded his authority under Article 6, section 6.2, by reducing the 12-month medical-leave maximum contained in Article 27, section B, to 11 months and 18 days. Thus, the union argues, the arbitrator's award fails to draw its essence from the parties' collective-bargaining agreement, but instead reflects merely the arbitrator's personal notions of industrial justice.

In discussing the union's contentions, the arbitrator stated that the main question is whether the parties have chosen by their agreement to define the outermost limit of a reasonable interruption of service. He found that Article 27 defines the

---

[3]Under the facts of this case it is undisputed that grievant did not quit and was not laid off for economic reasons.

-7-

outermost limit as 12 consecutive months. He stated that Dougherty announced Wright's termination on November 4, 1992, based on the mistaken assumption that she had been on leave of absence for 12 consecutive months, when in fact Wright did not exhaust 12 months of medical leave until after November 16, 1992.

Wright did not have a full release from Dr. Haupt to return to work by November 17, 1992, the date her 12-month leave of absence expired under Article 27.[4] Since she could not have returned to work by that date, the arbitrator determined that her effective date of termination was November 17, 1992, despite the fact that she was told she was fired 13 days earlier.[5] Therefore, the arbitrator held that Wright had her seniority and wage rate broken as of November 17, 1992. We believe the agreement is susceptible of this interpretation. When Dougherty told Wright she was fired, he knew she had not been fully cleared to return to work, and that Dr. Haupt was not going to see her again until after November 16. If Wright had received a full clearance on or before November 16, a different case would be presented, but that did not happen. Even

---

[4]The arbitrator found that the record did not contain sufficient evidence to conclude that light-duty work was available to the grievant between November 4 and November 16, 1992.

[5]In support of his conclusion, the arbitrator cites an ALR 2d article that states that a notice to terminate an agency or employment contract, although allowing the noticed party a shorter period of time than that stipulated in the contract, is not wholly inoperative, but serves to terminate the relationship after the expiration of the stipulated time. "Effect of Attempt to Terminate Employment or Agency Contract Upon Shorter Notice Than That Stipulated in Contract," 96 ALR2d 272 (1962). The union uses this reference as support for its proposition that the arbitrator's award did not draw its essence from the collective-bargaining agreement but instead relied on his own notions of industrial justice. However, the United States Supreme Court has expressly stated that an arbitrator may look for guidance from many sources as long as the award draws its essence from the collective-bargaining agreement. Enterprise Wheel, 363 U.S. at 597.

if the discharge technically occurred on November 4, the substance of the twelve-month limit in Article 27 was not violated, because the company knew Wright could not return within the twelve-month limit.  While the wording of the award and some of its reasoning on subsidiary points is perhaps open to criticism, its essence is consistent with the spirit and reason of the collective-bargaining agreement.  No more is required.

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.