# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-4059

_____

|  |  |  |
|---|---|---|
| Metal Shop, Warehousemen, and Helpers Union, Local 970, A Labor Organization, | * * * * | |
| Appellant, | * * | |
| v. | * * | Appeal from the United States District Court for the District |
| B. F. Nelson Folding Cartons, Inc., A Corporation, | * * * | of Minnesota. |
| Appellee. | * | |

_____

Submitted: May 14, 1998

Filed: July 20, 1998

_____

Before McMILLIAN, NOONAN,[1] and MORRIS SHEPPARD ARNOLD, Circuit
     Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Metal Shop, Warehousemen, and Helpers Union, Local 970, went on strike at
the plant of B. F. Nelson Folding Cartons, Inc. (Nelson). After a brief strike, the union

_____

[1]The Honorable John T. Noonan, Jr., United States Circuit Judge for the Court
of Appeals for the Ninth Circuit, sitting by designation.

and Nelson agreed to a new collective bargaining agreement and the striking employees returned to work. Nelson placed three of these returning workers in positions different from the ones that they held before the strike. Each of the three returning employees filed a formal grievance to protest the loss of his earlier position, and the parties submitted the disputes to arbitration.

The arbitrator sustained two of the grievances, ordering Nelson to reinstate Thomas Scheidegger and Terry Murschel to their previous jobs. The arbitrator denied the third grievance, initiated by James Troske, but ordered Nelson to invite employees to apply for the position that Mr. Troske sought. (We refer to this last process hereafter as "posting.")

The union brought suit in the district court to confirm the arbitrator's award, and Nelson filed a counterclaim asking that it be set aside. The district court confirmed the arbitrator's award as to Mr. Scheidegger but vacated the award as to Mr. Murschel. The district court also vacated the arbitrator's order to post the position that Mr. Troske sought. The union then appealed the district court's rulings pertaining to Mr. Murschel and Mr. Troske.

We affirm in part and reverse in part the judgment of the district court, and we remand the case for further proceedings not inconsistent with this opinion.

## I.

The scope of judicial review of an arbitrator's decision, as the district court recognized, is narrow. " 'The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.... As long as the arbitrator's award "draws its essence from the collective bargaining agreement," and is not merely "his own brand of industrial justice," the award is legitimate.' " *Alvey, Inc. v. Teamsters Local Union No. 688*, 132 F.3d 1209, 1211 (8th Cir. 1997), quoting *United Paperworkers Int'l Union*

*v. Misco, Inc.*, 484 U.S. 29, 36 (1987), itself quoting *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597 (1960).

A court "cannot interfere with the arbitrator's award 'unless it can be said with positive assurance that the contract is not susceptible of the arbitrator's interpretation.' " *Kewanee Machinery Division v. Local Union No. 21, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America*, 593 F.2d 314, 318 (8th Cir. 1979), quoting *International Brotherhood of Electrical Workers v. Professional Hole Drilling, Inc.*, 574 F.2d 497, 503 (10th Cir. 1978).  Thus, " 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.' "  *John Morrell and Co. v. Local Union 304A of the United Food and Commercial Workers, AFL-CIO*, 913 F.2d 544, 559 (8th Cir. 1990), *cert. denied*, 500 U.S. 905 (1991), quoting *Misco, Inc.*, 484 U.S. at 38.

Quite recently, we upheld an arbitrator's award in a labor dispute, holding that "[w]hile the wording of the award and some of its reasoning on subsidiary points is perhaps open to criticism, its essence is consistent with the spirit and reason of the collective-bargaining agreement.  No more is required." *United Food and Commercial Workers, AFL-CIO, CLC, Local No. 88 v. Shop 'N Save Warehouse Foods, Inc.*, 113 F.3d 893, 897 (8th Cir. 1997).

## II.

Prior to the strike, Mr. Murschel served in the position of "AA Pressman" on the day shift (the final and highest position in the hierarchical progression in which all of the employees who work on the printing presses at Nelson participate).  During the strike, Ronald Erickson replaced the striking Mr. Murschel as the "AA Pressman" on the day shift, and when Mr. Murschel returned to Nelson after the strike, he was assigned to the position of "AA Pressman" on the second shift.

The arbitrator held that Nelson violated the new collective bargaining agreement by failing to reinstate Mr. Murschel as an "AA Pressman" on the day shift. In reaching this conclusion, the arbitrator relied on a "grandfather" provision found in section 10.2 of the bargaining agreement. That section provides that, notwithstanding a seniority provision in the bargaining agreement, "all current permanent full time employees will remain in their current positions."

Contrary to what Nelson argues on appeal, the word "positions" as used in section 10.2 is not subject to only one interpretation. The word might, as Nelson argues, refer to jobs that employees were performing on the date that the collective bargaining agreement was signed. But the word might also, as the union argues and the arbitrator held, refer to the jobs that employees held permanently as of the date of the new collective bargaining agreement. The word "positions," either alone or combined with the word "current," does not necessarily require either of these interpretations.

The arbitrator resolved this uncertainty in the new collective bargaining agreement by examining other terms of the new collective bargaining agreement and the facts surrounding its acceptance. The arbitrator determined that the jobs assigned during the course of the strike were temporary job assignments partly because the company operated only one press during the strike, and that press was not operated regularly on three shifts (apparently, Nelson normally operates its presses on three consecutive shifts). Accordingly, he held, job assignments made during the strike were not protected by the grandfather clause.

The arbitrator then concluded that Mr. Erickson's assignment to the day shift was not permanent and that he was therefore not entitled to the protections of the grandfather clause. On the other hand, he held that Mr. Murschel had been permanently assigned to the day shift as an "AA Pressman." The arbitrator therefore concluded that Nelson had to reinstate Mr. Murschel in order to comply with the collective bargaining agreement.

-4-

We cannot say "with positive assurance," *Professional Hole Drilling, Inc.*, 574 F.2d at 503, that the collective bargaining agreement "is not susceptible of the arbitrator's interpretation," *id.*, on this point. Whether either Mr. Murschel or Mr. Erickson was entitled to the protections of the grandfather clause may be a nice question, but that is precisely the reason why Nelson and the union contracted in the collective bargaining agreement for arbitration in the event of a disagreement. While one might reasonably disagree with the arbitrator's reasoning, we believe that he can fairly be said to have interpreted, not amended, the collective bargaining agreement. The arbitrator's decision here is therefore drawn from the essence of that agreement, and thus we believe that the district court erred in vacating this portion of the award.

### III.

We turn next to the arbitrator's ruling that Nelson post the position that Mr. Troske desired. Prior to the strike, Mr. Troske served officially in the position of "Floor C" (the first position in Nelson's hierarchical progression for printing press employees). He had acted, however, as a "Feeder" for about one month prior to the strike. "Feeder," also known as "B Pressman," is the hierarchical position immediately superior to "Floor C" in Nelson's progression.

During the strike, Nelson hired David Baldwin instead to serve as a "Feeder," and when Mr. Troske returned from the strike, Nelson assigned him to his original role of "Floor C" rather than "Feeder." Mr. Troske filed a grievance because he was assigned to a different position from the one that he occupied prior to the strike. The arbitrator rejected Mr. Troske's grievance, finding that his assignment as a "Feeder" prior to the strike was not permanent, and thus not protected by the grandfather clause in section 10.2. The rejection of Mr. Troske's grievance is not on appeal, since the union did not challenge that portion of the arbitrator's determination before the district court.

The arbitrator did, however, determine that the company violated the terms of the collective bargaining agreement by failing to post the position of "Feeder" prior to hiring Mr. Baldwin, and ordered Nelson to post the position. We agree with the district court that this portion of the arbitrator's award does not draw its essence from the collective bargaining agreement.

The arbitrator relied upon section 10.5 of the collective bargaining agreement in concluding that Nelson was required to post the "Feeder" position that Mr. Troske desired. That section does indeed provide that when there is an opening for any reason in any classification of work covered by the agreement, the opening shall be posted by the employer for seventy-two hours. The principle established in this section is refined, however, by section 10.5(A), which provides that work assignments classified as "progression" jobs should "normally" be posted only at the starting "C" level, and by section 10.5(B), which provides that if there are no qualified employees within the progression capable of satisfactorily performing the vacant work assignment, the job should be posted.

The arbitrator concluded that there was no evidence that section 10.5 was followed during the strike and therefore ordered that the job be posted. But the arbitrator's award makes no reference to either section 10.5(A) or section 10.5(B). The plain text of section 10.5(A) indicates that a progression job would normally be posted only at the "C" level. There is no dispute that "Feeder" is a progression position at the "B" level rather than a "C" level. This section, then, read together with section 10.5(B), indicates that Nelson did not violate the collective bargaining agreement by failing to post the "Feeder" position, unless there was something abnormal about the hiring of the "Feeder," or unless no qualified employees within the progression were capable of performing the position satisfactorily.

We do not believe that a strike, in and of itself, or any of the events that attended the strike that occurred in this case, can reasonably be said to constitute an abnormal

situation within the meaning of section 10.5(A), and we can find no evidence in the record to indicate that there were no qualified employees within the progression capable of performing the position of "Feeder." Since we think that this portion of the arbitrator's award finds no support whatever in the relevant collective bargaining agreement, we conclude that it cannot have drawn its essence from the agreement.

## IV.

We affirm in part and reverse in part the judgment of the district court, for the reasons given, and we remand the case for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.