HEANEY, Circuit Judge,
dissenting.
The majority overturns the arbitrator’s award simply because it disagrees with the arbitrator’s decision. The Supreme Court and our court have consistently disapproved such activism.
I. BACKGROUND
The facts giving rise to this case are quite simple. On February 15, 1994, the Company shut down a paper machine to perform eight hours of routine maintenance work. It assigned that work to an outside contractor, rather than to its Union employees. The Union filed a timely grievance objecting to the assignment. The parties agreed to arbitrate the dispute. The CBA provides that the decision of the arbitrator shall be final and binding.
At the outset of the hearing, the Union and the Company were unable to agree on the issue to be arbitrated, but stipulated that the arbitrator should frame the issue. The arbitrator framed the issue as follows: “Did the Company violate the Contract by its assignment of preventive maintenance work to outside contractors on February 15, 1994? If so, what shall be the remedy?” (J.A. at 57.)
In defense of its position, the Company claimed that it was permitted by the CBA to use non-Union employees to perform routine maintenance work. Article XVII § (B)(1)(b) of the CBA states:
The Company recognizes that maintenance employees are generally expected *819 to perform operating maintenance, preventative maintenance and day-to-day equipment repairs. However, situations may arise which will necessitate the use of outside forces to perform such work.
(J.A. at 108.)
The arbitrator agreed that the governing provision was Article XVH(B)(l)(b). However, he found that the language in the second sentence of this Article was ambiguous in that it did not define what type of “situations” would arise that would permit the company to use outside contractors for work that Union employees are typically entitled to perform. He construed the ambiguity against the Company because it authored this provision.
The arbitrator then stated:
As described by the Company!,] the disputed work involved checking rotating equipment bearings that could only be checked while the equipment was not operating, and referred to that work as “preventive maintenance.” The Company has conceded that such work is normally performed by General Mechanics in the Maintenance Department, but argues that the use of contractors in this instance was justified by (a) the necessity to complete it within the scheduled time frame of 8 hours, (b) not all the work could be performed by General Mechanics, (c) all available General Mechanics were being utilized, and (d) the decision to use a contractor was justified as opposed to interrupting work in other areas of the Mill, and was based on sound business practices.
Under other circumstances such reasons for the decision could be sound, but the problem with the Company’s rationale in these circumstances is that it is based on exceptions which are not authorized by the Contract, such as Article XVII(B)(2). The Contract doesn’t say routine maintenance work will be performed by General Mechanics “except” when there is a time scheduling problem, or “except” when all the General Mechanics are being utilized, or “except” when work in other areas would have to be interrupted, or “except” when the decision to use contractors is based on sound business practices.
The Company has no absolute right to employ contractors at will. It must do so within the restrictions imposed by the Contract. The decision to use contractors can’t be justified on the basis of enlightened management, labor costs, work efficiency, area priorities, available manpower, etc. The question is simply what is allowed by the Contract.
(J.A. at 70-71 (emphasis added).)
Because the Company’s use of outside contractors to perform maintenance work was not specifically permitted by the CBA, he ruled that such use of outside contractors in this circumstance violated the CBA.
II. DISCUSSION
It is well established that federal policy strongly favors arbitration as a means of resolving labor disputes. See United Paperworkers Int’l Union v. Misco, 484 U.S. 29, 37, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); Kewanee Mach. Div. v. Local Union No. 21, Int’l Bhd. of Teamsters, 593 F.2d 314, 316-17 (8th Cir.1979). Accordingly, our review of an arbitrator’s decision is “extremely limited.” United Food & Commercial Workers, AFL-CIO, CLC, Local No. 88 v. Shop 'N Save Warehouse Foods, Inc., 113 F.3d 893, 894 (8th Cir.1997). We must construe the arbitrator’s award broadly, resolving all doubts in favor of its validity. See id. at 895. “Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator’s view of the facts and of the meaning of the contract that they have agreed to accept.” Misco, 484 U.S. at 37-38, 108 S.Ct. 364.
Contrary to the majority’s assertion, the arbitrator did not nullify any contract language. He simply construed the CBA in a manner that was unacceptable to the Company and unacceptable to the majority. *820 The arbitrator disregarded a portion of the CBA that he found too ambiguous to be given any meaning. Absent that portion of the CBA, he found no support for the Company’s position.
The arbitrator then ordered the Company to comply with the CBA. The majority asserts that this part of the award bans the use of all maintenance subcontracting, contravening the plain language of the CBA. I disagree. The arbitrator’s award recognized that the Company may still use outside contractors, but required that the Union workforce be fully utilized before the Company used outside contractors to perform routine maintenance.
Because the majority is not satisfied that the arbitrator’s decision was the right one, it undertakes its own review and substitutes its own interpretation of the contract for that of the arbitrator. This conflicts directly with the Supreme Court’s restriction on such practices. “[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.” Misco, 484 U.S. at 38, 108 S.Ct. 364; see also Shop ‘N Save Warehouse Foods, 113 F.3d at 895; John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers, 913 F.2d 544, 559 (8th Cir.1990). The arbitrator’s result is fully supported by the record. Therefore, the decision should not have been disturbed by the district court, nor should it be disturbed by this court. Accordingly, I cannot join in the majority’s affirming opinion.
III. CONCLUSION
When we review arbitration cases, whether or not this court would reach the same conclusion as the arbitrator is not the issue. Rather, we are obligated to broadly consider whether there is any support in the record for the arbitrator’s award, irrespective of whether we believe the arbitrator reached the right conclusion. We are not permitted to micro-manage the business of arbitration. The arbitrator’s award is what the parties bargained for, and the award is supported by the record. Under the well-settled precedent of the Supreme Court and this court, the award must stand. I respectfully dissent.