LINCOLN NATIONAL LIFE INSUR-
ANCE COMPANY and Lincoln Fi-
nancial Advisors Corporation, Mary
Ann Burris and Barbara Crosby, Peti-
tioners,

v.

Thomas W. PAYNE, Respondent.

No. CIV.4–02–CV–70346.

United States District Court,
S.D. Iowa,
Central Division.

July 25, 2003.

Denny M. Dennis, Todd A. Strother, Bradshaw Fowler Proctor & Fairgrove, De Moines, IA, George A. Lamarca, Justin E. Lavan, Lamarca & Landry, West Des Moines, IA, for Petitioners.

Mark McCormick, David L. Charles, Belin Lamson McCormick Zumback & Flynn PC, Des Moines, IA, for Respondent.

## DENIAL OF APPLICATIONS AND MOTIONS TO VACATE ARBITRATION AWARDS, AND ORDER CONFIRMING AWARD AND ENTERING JUDGMENT THEREON

VIETOR, Senior District Judge.

In this action, petitioners Lincoln National Life Insurance Company and Lincoln Financial Advisors Corporation (hereinafter collectively referred to as "Lincoln") seek to vacate an arbitration award pursuant to federal substantive law and the Federal Arbitration Act (FAA), 9 U.S.C. § 10, which was entered in favor of respondent Thomas W. Payne ("Payne"). Lincoln also requests a dismissal with prejudice of all claims brought against it in the arbitration proceeding, and attorney's fees and costs. Petitioners Mary Ann Burris ("Burris") and Barbara Crosby ("Crosby"), in a separate action, Civil No. 4:02–cv–70351, sought similar relief and further sought a judgment in their favor on their counterclaims against Payne. In an order entered August 22, 2002, pursuant to Fed. R.Civ.P. 20(a), Burris and Crosby were joined as plaintiffs in this case and Civil No. 4:02–cv–70351 was dismissed. Federal subject matter jurisdiction rests on 28 U.S.C. § 1332(a), diversity of citizenship.

## FACTUAL BACKGROUND

In 1969, Lincoln entered into a written contract with Payne, who had an insurance agency, pursuant to which Payne acted as an insurance agent and registered representative for Lincoln. Payne's agency also represented many other insurance companies and the agency also sold mutual funds and annuities for other entities. Burris and Crosby later joined Payne's insurance agency as insurance agents and registered representatives for Lincoln. In 1998, disputes arose regarding Payne's performance or non-performance of his contract, Lincoln's rights under the contract, Lincoln's termination of Payne's contract, and allegedly defamatory statements Payne made about Burris and Crosby. Payne filed an action asserting claims against Lincoln, Burris, and Crosby in the Iowa District Court for Polk County on October 19, 1998 (*Payne v. Burris et al.,* Case No. CL 77900). Lincoln then filed a motion to compel arbitration, alleging, *inter alia:*

2. * * * The agents and registered representatives of Lincoln, including the Plaintiff Thomas W. Payne and the Defendants Mary Ann Burris and Barbara Crosby, signed and executed Uniform Applications for Securities Industry Registration or Transfer on Form U–4 (hereinafter "U–4") in connection with the performance of their duties as agents and registered representatives for Lincoln.

3. In signing and executing the U–4, seeking registration with the National Association of Securities Dealers ("NASD") each of the agents, including the Plaintiff Thomas W. Payne, agreed to "arbitrate any dispute, claim or con-

troversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or bylaws . . ." of the NASD.

Payne did not file a resistance to the motion, but rather the parties entered into a written agreement to submit "all claims as set forth in the Polk County Action" to binding National Association of Security Dealers (NASD) arbitration. On April 16, 1999, the court approved the arbitration agreement and ordered, *inter alia:*

4. The parties shall proceed toward the presentment and resolution by arbitration of all claims which are asserted in **or might otherwise have been asserted in** the above-captioned action, pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc., as modified and amended by said Agreement Regarding Arbitration.

5. The parties shall briefly report to this Court on the status of the arbitration proceedings directed herein on or before December 17, 1999, and at 180-day intervals thereafter, until the conclusion of all arbitration proceedings.

6. The parties shall report to this Court as to the final decision and disposition reached in the arbitration proceedings in a manner so as to enable this Court to determine what ultimate type of proceedings or order will be necessary and appropriate so as to finally dispose of the above-captioned action.

7. Other than the reports as hereinabove directed, no further proceedings shall be filed, sought, or pursued in this action until a final resolution and final determination and decision of the arbitration proceedings ordered herein.

Iowa District Court Ruling and Order on Pending Motions at 2–3 (emphasis supplied). Counsel for all parties signed the last page of the order beneath the word "APPROVED."

Following extensive, prolonged discovery and approximately five weeks of hearings, the NASD arbitration panel entered a decision on June 20, 2002. In their decision, the arbitrators set forth the following "Case Summary:"

Claimant [Payne] asserted causes of action against the Lincoln Respondents including: interference with contract, interference with business relations, aiding and abetting breaches of fiduciary duty, fraud and fraudulent concealment, and unjust enrichment. Claimant asserted the causes of action against Respondents Burris and Crosby including: breach of contract, breach of fiduciary duty, and accounting between partners. Claimant submitted the following issue for resolution to the Panel, "Whether an insurance company can encourage a long-time successful Agent to: build a personal practice/agency, introduce new Agents/Brokers, and engage in efforts to build a long-term practice/agency using the Successor Building Concept, only to have the insurance company interfere with, actively encourage, conspire with, and facilitate the force-out of that Agent by the individuals he brought into the practice/agency to run it?"

Unless specifically admitted in their Answer, the Lincoln Respondents denied the allegations made in the Statement of Claim and asserted defenses including the following: where a party acts within its contractual and legal rights, it cannot be held liable for tortious interference with performance of contract, qualified privilege, Respondent Lincoln National had the right to terminate Claimant's services as an independent contractor, and legally and validly did so, and no such cause of action as "aiding and abet-

ting breaches of fiduciary duty" exists under Iowa law. The Lincoln Respondents filed a Counterclaim for tortious interference with contractual relations and defamation.

Unless specifically admitted in their Answer, the Individual Respondents denied the allegations made in the Statement of Claim and asserted the following defenses: there has been no breach of contract/partnership agreement, the Statute of Frauds, failure to state a claim upon which relief can be granted, unilateral contract, prevention or frustration of performance, lack of consideration, renunciation, prior material total breach, the terms of the alleged partnership agreement are unconscionable and therefore unenforceable, the doctrines of estoppel and waiver, failure to mitigate damages and public policy. Respondents Burris and Crosby filed a Counterclaim against Claimant for tortuous [sic] interference with prospective business advantage, defamation and spoliation of evidence.

The arbitrators recited the following as the "Relief Requested:"

Claimant requested an award in the amount in excess of $600,000.00 in addition to exemplary damages. In correspondence to NASD dated May 24, 1999, Claimant requested damages between $6,000,000.00 and $10,000,000.00.

The Lincoln Respondents requested that the claims asserted against them be denied in their entirety and other unspecified damages. The Lincoln Respondents requested damages in excess of $300,000.00 plus punitive damages in their counterclaims.

Respondents Burris and Crosby requested that the claims asserted against them be denied in their entirety and that they be awarded their costs and attorneys' fees, as well as award actual damages estimated between $30,000.00 and $300,000.00 and punitive damages on their tortious interference counterclaim, plus $175,000.00 for Crosby and $150,000.00 to Burris on their defamation counterclaim, and damages including unspecified discovery sanctions and that the trier of fact draw an unfavorable inference in their spoliation of evidence counterclaim.

The arbitrators then made their "Award" as follows:

After considering the pleadings, the testimony, and the evidence presented at the hearing and the post-hearing submissions, the undersigned arbitrators have decided in full and final resolution of the issues submitted for determination as follows:

1.) Respondents, Lincoln National Life Insurance Company, Lincoln Financial Advisors Corporation, Mary Ann Burris and Barbara Crosby, are jointly and severally liable for and shall pay to Claimant, Thomas W. Payne, the sum of $175,352.00 in compensatory damages;

2.) Respondents Lincoln National Life Insurance Company and Lincoln Financial Advisors Corporation are jointly and severally liable for and shall pay to Claimant, Thomas W. Payne, the sum of $1,108,023.00 in compensatory damages;

3.) The Counterclaim of Respondent Lincoln National Life Insurance Company and Respondent Lincoln Financial Advisors Corporation is dismissed with prejudice;

4.) The Counterclaim of Respondents Mary Ann Burris and Barbara Crosby is dismissed with prejudice;

5.) That other than Forum Fees which are specified below, the par-

ties shall each bear their own costs and expenses incurred in this matter;

6.) That any relief not specifically enumerated, including punitive and exemplary damages, is hereby denied with prejudice.

On July 12, 2002, in the state court case, Payne filed a Report to the Court and Application for Entry of Judgment. A few days later, on July 18 and 19, Lincoln, Burris and Crosby filed their applications and motions to vacate the arbitration award in this court, and also requested that this court enter an order staying the state court action. (This court did, on August 22, 2002, stay the state court proceedings.) In the proceedings in this court, on December 9, 2002, Payne filed a motion for order confirming the arbitration award. On December 6, 2002, I heard oral arguments of counsel on petitioner's application to vacate the arbitration award. Preliminarily, there was some discussion, initiated by me, about remanding the matter to the arbitrators for clarification. On December 12, 2002, I entered an order remanding the case to the arbitrators to identify the claim or claims on which they granted the award of damages and provide a summary statement of the basis for their decision.

On May 6, 2003, counsel for Lincoln filed a notice that they had received from NASD Dispute Resolution, Midwest Region, a communication from the arbitrators that in their view, the award was rendered in accordance with the standards set forth in § 10330(e) of the NASD Code of Arbitration, which requires that the award contain "the damages and other relief awarded, a statement of any other issues resolved," and various other matters concerning the issues in controversy and factual matters concerning the arbitration hearing itself, and that no provision of the Code of Arbitration requires, or permits, the arbitrators to prepare a detailed opinion or to set forth a specific legal basis for their awards. The clarification I sought as to the identity of the claim or claims upon which the awards were made was not provided.

## LIMITED GROUNDS TO VACATE

 There is scant room for judicial review of an arbitration decision. The court may vacate an arbitration decision for any of four reasons set forth in 9 U.S.C. § 10(a), only one of which is urged by petitioners: "(4) where the arbitrators exceeded their powers, * * *." Additionally,

We have allowed that, " '[b]eyond the grounds for vacation provided in the FAA, an award will only be set aside where it is completely irrational or evidences a manifest disregard for the law.' " *Val–U Constr. Co. v. Rosebud Sioux Tribe,* 146 F.3d 573, 578 (8th Cir. 1998) (quoting *Kiernan v. Piper Jaffray Cos.,* 137 F.3d 588, 594 (8th Cir.1998) (quotation omitted)). These extra-statutory standards are extremely narrow: An arbitration decision may only be said to be irrational where it fails to draw its essence from the agreement, and an arbitration decision only manifests disregard for the law where the arbitrators clearly identify the applicable, governing law and then proceed to ignore it. *Stroh Container Co. v. Delphi Indus.,* 783 F.2d 743, 749–50 (8th Cir.1986). "We may not set an award aside simply because we might have interpreted the agreement differently or because the arbitrators erred in interpreting the law or in determining the facts." *Id.* at 751. Rather, the contract must not be "susceptible of the arbitrator's interpretation." *Local 970 v. B F. Nelson Folding Cartons, Inc.,* 151 F.3d 748, 750 (8th Cir.1998) (quotation omitted).

*Hoffman v. Cargill Incorporated,* 236 F.3d 458, 461–62 (8th Cir.2001). There is also a narrow public policy basis that permits a court to decline to enforce an arbitration award that contravenes "explicit public policy." *See Bob Schultz Motors, Inc. v. Kawasaki Motors Corporation, U.S.A.,* 334 F.3d 721, 725 n. 2 (8th Cir.2003). This narrow basis, however, is not urged in this case.

That is it. At least in the Eighth Circuit there is no other basis for vacating an arbitration decision.

## PETITIONERS' ARGUMENTS

### *Powers Exceeded*

■ Petitioners argue that the arbitrators exceeded their powers by considering issues not agreed to be submitted by the parties, by not conforming their decision to the terms of the contract between Lincoln and Payne, and by hearing a claim that Payne raised shortly before the hearing.

Petitioners' contention that the arbitrators exceeded their powers is without merit. The parties agreed to submit to arbitration "any dispute, claim or controversy that may arise between" or among them, and "all claims which are asserted in or might otherwise have been asserted in the [state court action]." The arbitrators could hear any issue within that framework, whether initially identified or not identified until shortly before the hearing. It was for the arbitrators under the complete record made to interpret and construe the contract and to then consider the contract as interpreted and construed in the context of all the evidence relevant to all of the issues raised.

The award will not be vacated on the ground that the arbitrators exceeded their powers.

### *Award Irrational*

Petitioners argue that the arbitrators' award is irrational. I do not find the award irrational. It draws its essence from the parties' agreement, and the award is based on the extensive evidence placed before the arbitrators.

The award will not be vacated on the ground that the award is irrational.

### *Disregard for the Law*

■ As noted in the quotation from *Hoffman, supra,* "an arbitration decision only manifests disregard for the law where the arbitrators clearly identify the applicable governing law and then proceed to ignore it." There is no showing that the arbitrators in this case ignored any applicable law that they clearly identified. Petitioners argue that the arbitrators' refusal, upon the December 12, 2002, remand, to identify the claim or claims upon which they made the award supplies a valid basis for concluding that the arbitrators manifested a disregard for the law, citing language in *Halligan v. Piper Jaffray, Inc.,* 148 F.3d 197, 204 (2d Cir.1998), that where the "reviewing court is inclined to hold that an arbitration panel manifestly disregarded the law, the failure of the arbitrators to explain the award can be taken into account."

The refusal of the arbitrators to even identify the claim or claims upon which they made the award is frustrating. In the remand order that is all they were asked for, plus a summary statement of the basis for their decision. They were not asked to provide findings, or legal conclusions, or a detailed opinion, or even a specific legal basis for their award. Assuming they were not required to provide a summary statement of the basis for their decision, I strongly disagree with their opinion that under the Code of Arbitration they need not—in fact are not permitted—to identify in a multi-claim case the claim or claims upon which they granted the award. In a case where there is but one

claim for which various theories of liability are advanced by the claimant, such as a negligence claim based on several specifications of negligence, perhaps the arbitrators need not identify the theory or theories on which they make an award. In this case, however, there are separate and distinct claims, and it defies common sense to say that the claim or claims upon which the award is made need not be identified.

Be that as it may, under the *Halligan* language the arbitrators' failure to explain an award may be "taken into account" *if* the court is already "inclined to hold that an arbitration panel manifestly disregarded the law." Because there is no showing that the arbitrators ignored some applicable law that they clearly identified, I am not so inclined.

The award will not be vacated on the ground that it manifests a disregard for the law.

### RULINGS AND ORDERS

Petitioners' applications and motions to vacate arbitration award are **DENIED** as to all relief requested.

Respondent's motion for order confirming award is **GRANTED**.

**IT IS ORDERED** that the arbitrators' award is **CONFIRMED** and that judgment be entered in favor of respondent Thomas W. Payne against petitioners Lincoln National Life Insurance Company and Lincoln Financial Advisors Corporation, jointly and severally, in the amount of $1,108,023.00 with interest at the rate of 5% per annum from and after June 20, 2002, until the date of judgment and interest at the federal statutory rate thereafter, and that judgment be entered in favor of respondent Thomas W. Payne against petitioners Lincoln National Life Insurance Company, Lincoln Financial Advisors Corporation, Mary Ann Burris, and Barbara Crosby, jointly and severally, for $175,352.00, with interest at 5% per annum

from and after June 20, 2002, until the date of judgment and at the federal statutory rate thereafter.

**IT IS FURTHER ORDERED** that this court's August 22, 2002, stay of state court proceedings in *Payne v. Burris, et al.,* Iowa District Court for Polk County, Case No. CL 77900 remain in effect pending any appeal of this decision.

**IT IS FURTHER ORDERED** that the clerk of this court shall certify a copy of this decision to the clerk of the Iowa District Court for Polk County in reference to *Payne v. Burris, et al.,* Case No. CL 77900.